IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. CR 06-129-N-EJL |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | MEMORANDUM ORDER |
| DANA M. RICHARDS, | ) | |
| Defendant. | ) | |

Pending before the Court in the above entitled matter is Defendant Dana M. Richards' motion to suppress. The motion seeks to suppress Defendant's statements made to Officers during two separate interviews on the grounds that she did not knowing or voluntary waive her Miranda rights because she was intoxicated and/or coerced. The parties have filed their responsive briefing and the matter is now ripe for the Court's consideration. A hearing on the motion was held on December 6, 2006 after which the Court took the motion under advisement.

**Factual and Procedural Background**

In April of 2006 Detective Hank Cooper and Sargent Eric Hildebrandt obtained a search warrant for Ms. Richards' residence based upon information obtained from the co-Defendant in this case, David Moen.[1] During the execution of the warrant Sergeant Hildebrandt advised Ms. Richards of her Miranda rights and testified that she waived those rights and voluntarily answered his questions. Ms. Richards was arrested and taken to the

---

[1] Mr. Moen has entered into a plea agreement and plead guilty to the charge of conspiracy to distribute methamphetamine.

Kootenai County public safety building. Later on, Sergeant Hildebrandt awoke Ms. Richards to pursue further questioning. As a result of the information and evidence obtained, the Government filed an indictment charging Ms. Richards with Conspiracy to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846.

During both of these questioning sessions, Ms. Richards alleges she was under the influence of prescription drugs and methamphetamine to the point that she was incapacitated and unable to knowingly waive her constitutional rights. In addition, Ms. Richards asserts that during the second questioning the officers became angry and threatened her whereupon she expressed confusion over the questions and asked that the interview be terminated. As such, Ms. Richards contends any waiver was the product of intimidation or coercion by the officers and, therefore, her statements should be suppressed. Finally, Ms. Richards argues the questioning subsequent to her expressed desire to terminate the interview should also be suppressed. The Court will address each argument in turn.

## ARGUMENTS

1) <u>Knowing and Voluntary Waiver</u>:

The Government must prove by a preponderance of the evidence that the accused voluntarily, knowingly, and intelligently waived her Miranda rights. <u>Colorado v. Connelly</u>, 479 U.S. 157 (1986). To prove a valid waiver the Government must show that (1) the waiver represented an "uncoerced choice," and (2) the defendant understood both the nature of the right being waived and the consequences of waiver. <u>Moran v. Burbine</u>, 475 U.S. 412 (1986). In assessing the validity of a waiver, the Court should analyze the totality of the circumstances surrounding the interrogation. A waiver is knowing and intelligent if it is

"made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." Collazo v. Estelle, 940 F.2d 411, 415 (9th Cir. 1991) (quotations and citations omitted); see also United States v. Rodriguez-Preciado, 399 F.3d 1118, 1128 (9th Cir. 2005) (quoting United States v. Doe, 155 F.3d 1070. 1074 (9th Cir. 1998) ("A waiver is voluntary if, under the totality of the circumstances, the confession was the product of a free and deliberate choice rather than coercion or improper inducement.").

The Government cites to Shackleford v. Hubbard, 234 F.3d 1072 (9th Cir. 2000) which is a habeas case involving ineffective assistance of counsel claims. In that case the court stated "The fact that a suspect is under the influence of drugs or medication is irrelevant if the suspect's statement was 'the product of a rational intellect and free will.'" (citations omitted). There the court noted the defendant was capable of asking lucid questions, coherent, articulate, and demonstrated a full awareness of the nature of the right being abandoned and the consequences of his decision to abandon it. Id. (citation omitted).

Defendant cites to Gladden v. Unsworth, 396 F.2d 373 (9th Cir. 1968) which is also a habeas proceeding where the circuit court reversed the district court's failure to determine the question of whether the defendant's statements were voluntary before admitting them to the jury. In Gladden the defendant made the statements while he was very intoxicated, which the government witnesses knew. The court determined that he was too intoxicated to make a voluntary statement.

The guiding principle to be applied in determining whether there has been a waiver of a constitutional right is whether there was an intelligent relinquishment or abandonment of a known right or privilege. Gladden, 396 F.2d at 376 (citing Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). Here, the evidence does not suggest that Ms. Richards was unable to understand the rights as presented to her by the Officer and comprehend the consequences of waiving those rights. At the hearing the defense put on evidence regarding Ms. Richards' consumption of alcohol prior to the arrest in the form of testimony from her friend, Shane Fitzgerald, her now-husband, Edwin VanGundy, and Ms. Richards herself. Mr. Fitzgerald testified that he and the Defendant "got drunk" the night before her arrest. Mr. VanGundy testified that he mixed drinks for he and Ms. Richards prior to the arrest and that Ms. Richards seemed "out-of-it." Ms. Richards testified that she had not slept for a couple days before the arrest, had consumed a lot of alcohol and done a line of meth, and that she had no memory of the evening after the Officers arrived at the house. The Officers present at her home, however, both testified that Ms. Richards appeared to be aware, responsive, and coherent to their questions and voluntarily gave her consent to be questions. So too at the later interview, the Officers testified that after they reminded her of her rights she expressed a willingness to talk to them and that she provided verifiable information. Sergeant Hildebrandt testified that he reminded Ms. Richards of the rights he had previously given to her and she acknowledged the same and again willfully spoke to the Officers. The Government also offered the audio tape of the second interview with Ms. Richards which the Court has now reviewed. The audio tape reveals that Ms. Richards' responses to questioning were coherent and voluntary and that she acknowledged and again waived her Miranda

rights.

At the hearing the parties debated the impact on an individual who had consumed both methamphetamine, a stimulant, and alcohol, a depressant. Though neither side was able to provide clear information regarding the effect of such combination, the Officers' testimony was that Ms. Richards did not exhibit any signs of intoxication such that she was so impaired that she could not voluntarily waive her rights. While the defense witnesses provided testimony regarding Ms. Richards' consumption prior to the arrest, they gave no testimony regarding her appearance at the time of the search, arrest, and subsequent interview. More telling is the testimony of the Officers who were present and who had extensive training and experience in recognizing individuals who were under the influence of either drugs or alcohol. Sargent Hildebrandt testified that he has nineteen years of law enforcement experience which includes six or seven years with the drug task force where he has received over a hundred hours of training in narcotics investigations and he has personally been involved in over 1,000 narcotics arrests. Sargent Hildebrandt stated that Ms. Richards did not exhibit any signs of intoxication and that she voluntarily waived her Miranda rights, was cooperative, and discussed specifics relating to recent drug transactions and the items found in the house during the search.[2] Detective Cooper testified that he has been involved in between 200 and 300 narcotics cases and that in talking with Ms. Richards for around an hour at the house and again later at the jail he did not see her exhibit any of the symptoms of drug or alcohol. In addition, Ms. Richards' responses on the audio tape are consistent with

---

[2] Sargent Hildebrandt testified on cross-examination that because Ms. Richards did not exhibit any signs of being intoxicated he did not feel it was necessary to call a drug recognition expert to the scene.

the Officers' testimony that she was coherent, responsive, and voluntarily engaged in the second interview. Accordingly, the Court finds Ms. Richards' Miranda waivers were knowing and voluntary and, therefore, the motion to suppress is denied.

2)   Intimidation or Coercion:

On the question of coercion, the Supreme Court has stated that

The inquiry whether a waiver is coerced has two distinct dimensions. First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

Colorado v. Spring, 479 U.S. 564, 573 (1987) (quoting Moran, 475 U.S. at 421) (citation and quotations omitted). Coercion exists where a suspect's "will [was] overborne and his capacity for self-determination critically impaired" because of coercive police conduct." Id. (citations omitted). "In Townsend v. Sain, 372 U.S. 293, 307 (1963) the Supreme Court said that if an individual's 'will was overborne' or if his confession was not 'the product of a rational intellect and a free will,' his confession is inadmissible because coerced." Gladden, 381.

The defense notes that during the second interview the Officers raised their voices and that they had to wake her up to conduct the interview. After viewing the testimony of the Officers at the hearing and listening to the audio tape, the Court concludes there is no evidence here of overreaching by the Officers or any coercion or improper inducement. Although there were heated moments during the interview, there was no action by the Officers preventing Ms. Richards from exercising her own free will in waiving her Miranda rights. The Officers clarified with Ms. Richards whether she wanted to continue talking with them to which Ms. Richards indicated she would continue and proceeded to freely discuss her methamphetamine dealings providing details as to quantities, price, and the individuals with whom she dealt. Therefore, the motion to suppress is denied on this basis.

3)   <u>Request to Terminate the Questioning</u>:

Police must terminate an interrogation if a defendant indicates that he or she wants to remain silent. <u>See</u> <u>Miranda</u>, 384 U.S. at 445. If a defendant's statement is ambiguous or equivocal, the police may only ask questions to clarify the defendant's desire to exercise his or her Miranda rights. <u>See</u> <u>Robtoy v. Kincheloe</u>, 871 F.2d 1478, 1482 (9th Cir. 1989) (equivocal request for counsel). "Beyond [the] duty to inform, Miranda requires that the police respect the [suspect's] decision to exercise the rights outlined in the warnings. 'If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, [or if he] states that he wants an attorney, the interrogation must cease.' " <u>Davis v. United States</u>, 512 U.S. 452, 472 (1994) (citing <u>Moran v. Burbine</u>, 475 U.S. 412, 420 (1986) (quoting <u>Miranda</u>, 384 U.S. 436, 473-474 (1966)).

To meet this standard, Ms. Richards' statements terminating question must have been

clear and unequivocal.  Approximately twenty-five minutes into the interview the Officers' demeanor became more heated and their questioning became more pointed.  Ms. Richards stated that she felt like they were trying to get her to incriminate herself and that she did not understand the purpose of the interview.  Ms. Richards then stated "I don't want to talk now because I feel like you guys are just yelling at me."  However, she continued to talk to the Officers asking them to explain why they were talking with her.  The Officers explained their purpose and then asked her "Now that you understand, do you want to talk?" to which Ms. Richards replied "That's fine."  The interview continued for another hour with Ms. Richards providing coherent responses to the Officers' questions.

Having reviewed the audio tape, the Court concludes that Ms. Richards did not seek to terminate the questioning.  After making her statement that she "didn't want to talk" she continued to talk with the Officers.  The Officer then inquired of Ms. Richards about whether she wanted to continue, to which she indicated she would proceed.  The Officer's inquiry was appropriate to clarify whether Ms. Richards desired to invoke her right to remain silent in light of the fact that she had continued to talk to the Officers after stating that she did not want to talk.  After agreeing to continue, Ms. Richards responded to questions for another hour.  Accordingly, the Court finds the Officers' conduct to be appropriate and that Ms. Richards did not attempt to terminate the interview.  Therefore, the motion to suppress should be denied.

## ORDER

Based on the foregoing and being fully advised in the premises, **IT IS HEREBY**

**ORDERED** that Defendant's motion to suppress (Dkt. No. 31) is **DENIED**. The trial in this matter shall be set for Tuesday, January 9, 2007 at 9:30 a.m. in Coeur d'Alene, Idaho.

DATED: **December 18, 2006**

~~Honora~~ble Edward J. Lodge
U. S. District Judge